IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LIBERTY INSURANCE CORPORATION**, | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-0757-L** |
| | § | |
| **DIXIE ELECTRIC, LLC.,** | § | |
| | § | |
| Defendant-Counterclaimant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Defendant-Counterclaimant Dixie Electric, LLC's Motion for Summary Judgment, filed August 8, 2014 (Doc. 11); and Plaintiff-Counterdefendant Liberty Insurance Corporation's Motion for Summary Judgment, filed August 11, 2014 (Doc. 14). Having considered the motions, responses, replies, record, and applicable law, the court **grants** Plaintiff-Counterdefendant Liberty Insurance Corporation's Motion for Summary Judgment and **denies** Defendant-Counterclaimant Dixie Electric, LLC's Motion for Summary Judgment.

**I.      Factual Background and Procedural History**

Liberty Insurance Corporation ("Liberty") filed this declaratory judgment action on February 27, 2014, seeking a declaration that it has no obligation under an insurance policy to indemnify its insured, Dixie Electric, LLC ("Dixie), for settlement of an underlying lawsuit that was brought against Dixie in New Mexico by the heirs and successors of deceased Dixie employee, Eddie Hilburn ("Hilburn"). Compl. (Doc. 1). On April 7, 2014, Dixie filed its original answer, as well as a counterclaim seeking a declaratory judgment that, under the terms and conditions of the policy, Liberty is obligated to indemnify it for settlement amounts paid in the underlying lawsuit. Answer

& Countercl. (Doc. 5).  The court now sets forth the relevant facts, which are undisputed unless otherwise noted.

### A.        The Policy

Liberty is an Illinois corporation with its principal place of business in Boston, Massachusetts.  Compl. ¶ 1.  Dixie is a Texas corporation with its principal place of business in Odessa, Texas.  Answer & Countercl. ¶ 2.  Among other things, Dixie provides oil field electrical construction and maintenance services in several states, including Texas and New Mexico.  *Id.* ¶ 11.

Liberty issued a Workers Compensation and Employers Liability Policy (the "Policy") to Dixie, policy number WC7-Z91-433477-010, effective from March 1, 2010, to March 1, 2011.  Dixie App. 649.  The Policy included the following limit on coverage: "Bodily Injury by Accident $1,000,000 each accident."  *Id.*  The Policy has two parts.  Part One of the Policy is the Workers Compensation Policy, and Part Two is the Employers Liability Policy.  In the instant action, the parties are only seeking declarations regarding coverage under Part Two, the Employers Liability Policy, which provides the following relevant types of coverage and exclusions:

### A.        How this Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

1.        The bodily injury must arise out of and in the course of the injured employee's employment by you.

* * *

### B.       We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to

your employees, provided the bodily injury is covered by this Employers Liability

Insurance.

Dixie App. 688.  Part Two of the Policy contains, among others, the following exclusion:

### C.       Exclusion

This insurance does not cover:

* * *

      5.       Bodily injury intentionally caused or aggravated by you[.]

*Id.* at 689.

### B.       The Underlying Lawsuit[1]

On January 18, 2011, Hilburn's heirs and successors filed a wrongful death action against

Dixie in New Mexico state court, after Hilburn was fatally electrocuted while performing work for

Dixie.  *See Julie Sakura, as Personal Representative of the Estate of Eddie Hilburn, Benito Hilburn*

*and Dora Hilburn v. Dixie Electric, LLC, Chevron U.S.A., Inc., Jorge Rodriguez, Jack Bara*, Cause

No. D-101-CV-2011-00207, in the First Judicial District Court of Santa Fe County, New Mexico

(the "Underlying Lawsuit").  *See* Ex. A to Dixie Answer & Countercl. (First Am. Compl. for

Wrongful Death, Mental and Emotional Distress and Loss of Consortium).

On or about October 1, 2010, pursuant to an agreement between Dixie and Chevron U.S.A.,

Inc., Dixie was performing work in New Mexico, putting in ground wire and moving bank poles.

---

[1] Liberty does not dispute Dixie's presentation of the facts for the limited purpose of determining whether it has a duty to indemnify Dixie.  Liberty Resp. to Dixie Summ. J. Mot. 14 ("[T]his Court need not comb the record to determine what the undisputed facts are.  Even if Dixie's review of the evidence is perfectly accurate and represents the undisputed evidence in the case, Dixie cannot show an accident in this case for purposes of indemnity coverage.").

Dixie App. 27, 695-702.  The crew that date included foreman Jack Bara ("Bara"), Hilburn, and

Jorge Rodriguez ("Rodriguez").  *Id.* at 3607, 3612.  As foreman, Bara was responsible for knowing

the contents of Dixie's safety manual and for ascertaining that his crew abided by the rules.  *Id.* at

2034.  Dixie's safety manual at all relevant times provided that mechanical equipment will not be

permitted to operate within 10 feet of energized lines.  *Id.* at 3462.

As summarized by Dixie, and as corroborated by the court's review of the summary

judgment record:

> [T]he crew was working around energized lines and the voltage exceeded 10,000 volts . . . [E]very Dixie employee knew that there is a 10 foot clearance rule as to un-insulated equipment being used around energized lines.   It is undisputed that a violation of the 10 foot clearance rule could result in electrocution or death.  It is also undisputed that Bara violated the 10 foot clearance rule the day of the incident[.]

Dixie Summ. J. Mem. 33-34 (internal citations to record omitted).  Dixie admits that based on these

undisputed facts, "a reasonable person could conclude that the death of Hilburn was expected to

flow from Jack Bara's violation of the 10 foot rule."  *Id.*

Dixie further summarizes the undisputed facts in the Underlying Lawsuit:

> The undisputed testimony established that Hilburn was electrocuted when Rodriguez raised the mast on the pressure digger and the mast made contact with an energized line.  There is also undisputed evidence that the pressure digger was violating the 10 foot clearance rule, in that there was only a 6 foot clearance between the un-insulated pressure digger and the energized lines.  Finally, there is undisputed testimony that had Jack Bara gutted the phases before parking the pressure digger under the energized lines, the accident would not have occurred.  Consequently, the undisputed evidence establishes that the violation of the 10 foot rule proximately caused Hilburn's death.
>
> * * *
>
> [T]he undisputed evidence establishes that a reasonable person would have expected the death of Hilburn to result from Jack Bara's violation of the 10 foot rule.  The undisputed evidence further establishes that Jack Bara was subjectively aware that a violation of the 10 foot rule would result in Hilburn's death.  Finally, the

undisputed evidence supports a finding that Jack Bara's violation of the 10 foot rule proximately caused Hilburn's death.   Consequently, the undisputed evidence supports a finding that Jack Bara's willful conduct resulted in Hilburn's death.

*Id.* at 34-35.

Liberty provided a defense to Dixie in the Underlying Lawsuit pursuant to a reservation of rights letter dated March 3, 2011.  The Underlying Lawsuit was settled prior to trial for an amount in excess of the Policy's limits of $1,000,000.  Dixie App. 775.  "In exchange for Liberty's payment of $1 million to Dixie, Dixie and Liberty agreed to seek, in this declaratory judgment action, a determination of coverage under the Policy for the claims against Dixie in the Underlying Suit." Liberty Summ. J. Mem. 8.

Both parties have filed motions for summary judgment in this diversity action, and they agree that Texas law applies.  In support of its motion (and in opposition to Dixie's motion), Liberty argues Dixie is not entitled to indemnification for any settlement consummated in the Underlying Lawsuit since Dixie cannot show, as a matter of law, that the liability-producing evidence from the Underlying Lawsuit satisfies the Policy's "accident" requirement.  Dixie, in support of its motion (and in opposition to Liberty's motion), contends that the evidence in the Underlying Lawsuit shows "gross negligence," which satisfies the Policy's coverage requirement of "bodily injury by accident." As the issues have been fully briefed, the parties' summary judgment motions are ripe for adjudication.

## II.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Ragas v. Tennessee Gas Pipeline Co.*,

136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

Prior to examining the parties' positions, a brief recitation of relevant Texas and New Mexico law is in order.

### A.   Applicable Law

#### 1.   *Texas Law on Duty to Indemnify*

Under Texas law:

> In liability insurance policies generally, an insurer assumes both the duty to indemnify the insured, that is, to pay all covered claims and judgments against an insured, and the duty to defend any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent, subject to the terms of the policy.

*D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (citation and internal quotations omitted). "While analysis of the duty to defend has been strictly circumscribed

by the eight-corners doctrine, it is well established that the 'facts actually established in the underlying suit control the duty to indemnify.'" *Id.* at 744 (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)).  "An insurer's duty to defend and its duty to indemnify are distinct and separate."  *Quorum Health Res. v. Maverick Cnty. Hosp.*, 308 F.3d 451, 468 (5th Cir. 2001).  Although in some instances it may be necessary to defer resolution of indemnity issues until after the underlying litigation is resolved, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Cnty. Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).  In a later decision, the Texas Supreme Court examined the reasoning in *Griffin*:

> In *Griffin*, the issue was whether the facts developed in the underlying tort suit for injuries caused by a drive-by shooting could form the basis for coverage under an automobile insurance policy.  We explained in that case that no "facts can be developed in the underlying tort suit that can transform a drive-by shooting into an auto accident."  In that scenario, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify." This conclusion was grounded on the impossibility that the drive-by shooting in that case would be transformed by proof of any conceivable set of facts into an auto accident covered by the insurance policy.

*D.R. Horton-Texas*, 300 S.W.3d at 744-45 (citing *Griffin*, 955 S.W.2d at 84) (internal citations omitted).

The insured bears the burden of establishing that its liability is within coverage of the policy. *Utica Nat'l Ins. Co. of Texas v. American Indem. Co.*, 141 S.W.3d 198, 2013 (Tex. 2004).  The insurer has the burden of proving the applicability of an exclusion on the policy.  *Guar. Nat'l Ins.*

*Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).[2]  "It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage." *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).  "This rule does not apply, however, when the term in question is susceptible of only one reasonable construction." *Id.*  "When there is no ambiguity, it is the court's duty to give the words used their plain meaning."  *Id.*

### 2.    New Mexico Worker's Compensation Act and a Delgado Claim

Generally, the New Mexico Worker's Compensation Act (the "Act") is the exclusive remedy for a worker "injured by accident arising out of and in the course of his [or her] employment[.]" *Delgado v. Phelps Dodge Chino, Inc.*, 34 P.3d 1148, 1153 (2001).  Under the Act, workers can sue their employers only if they are injured non-accidentally.  *Id.*  Before the *Delgado* decision in 2001, an employer could only be sued outside the scope of the Act's exclusivity provision if the injured worker could allege and prove that the employer had an actual intent to inflict harm on the employee.  *See Delgado*, 34 P.3d at 1155.  In *Delgado*, the court broadened the scope of the exception to the Act's exclusivity provision, and held that "when an employer intentionally inflicts or willfully causes a worker to suffer an injury . . . the injured worker may sue in tort."  34 P.3d at 1155-56.  The *Delgado* court elaborated that "willfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when:

> (1)    the worker of employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker;

---

[2] "Under Texas law, the burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought by the insured against the insurance company claiming the existence of coverage for a particular claim or event." *Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co.*, 244 F. Supp. 2d 706, 714 (N.D. Tex. 2003) (citations omitted).

(2)      the worker or employer expects the intentional act or omission to result in

injury or has utterly disregarded the consequences; and

(3)      the intentional act or omission proximately causes the injury.

34 P.3d at 1156.  "The burden to establish a *Delgado* claim is high.  It requires intentional infliction

of or willfully causing an injury.  Negligence is not enough."  *Chairez v. James Hamilton Constr.*

*Co.*, 215 P.3d 732, 740 (N.M. App. 2009); *see also Padilla v. Wall Colmonoy Corp.*, 145 P.3d 110,

113 (N.M. App. 2006) ("In *Delgado*, our Supreme Court made clear that even under the broader

willfulness tort, it was still describing intentional torts and not negligence.").

**B.      Discussion**

Both parties agree that the Policy covers only "bodily injury by accident," and that liability

under *Delgado* requires the insured to show "non-accidental conduct" caused the injury.  *See* Dixie

Summ. J. Mem. 29, 31-32, 37-38; Liberty Summ J. Mem. 9-10, 11-13.  The parties disagree,

however, as to the impact of the Policy's plain language and the requirements of the *Delgado* claim

in the Underlying Lawsuit on Liberty's duty to indemnify.

In support of its motion for summary judgment, Liberty argues it has no duty to indemnify

Dixie because the only viable claim in the Underlying Lawsuit was a *Delgado* claim.  Liberty argues

that "no liability facts developed in the Underlying Suit can possibly satisfy both the non-accident

standard of *Delgado* and the accident requirement of the Policy.  Liberty's duty to indemnify Dixie

is barred as a matter of law because Dixie cannot possibly carry its burden of showing its liability

was both accidental and non-accidental."  Liberty Summ. J. Mem. 11.  Relying on *Griffin*, *supra*,

where the Texas Supreme Court found that "[n]o facts can be developed in the underlying tort suit

that can transform a drive-by shooting into an auto accident," Liberty states: "Likewise, in this case,

no facts could possibly be developed in the Underlying Suit that could have transformed Dixie's

non-accidental *Delgado* conduct into an accident under the Liberty policy." *Id.* at 15.

In support of its motion for summary judgment, Dixie argues that the Underlying Lawsuit

supports a finding of liability under the *Delgado* case, and that a *Delgado* cause of action constitutes

an "accident" as that term is defined by the Policy and interpreted under Texas law.  More

specifically, Dixie contends that (i) the "Supreme Court of Texas [has] impliedly recognized that

grossly negligent conduct constitutes an 'accident' under the terms and condition" of the Policy at

issue here; and (ii) a *Delgado* cause of action is equivalent to Texas's gross negligence cause of

action.  Dixie Summ. J. Mem. 40-41.

In response to Dixie's motion for summary judgment, Liberty contends:

> The definition of "non-accident" under *Delgado* and that of "accident" under the
> Policy are mutually exclusive.  By definition, therefore, to the extent Dixie shows the
> evidence renders it liable under *Delgado*, it also shows the evidence precludes
> coverage under the Policy.  No liability producing facts developed in the Underlying
> Suit can possibly satisfy both the non-accident standard in *Delgado* and the accident
> requirement of the Policy.  This precludes Liberty's duty to indemnify Dixie as a
> matter of law.

Liberty Resp. to Dixie's Summ. J. Mot. 5.

Having considered the plain language of the Policy, the parties' arguments summarized

above, Texas law on the duty to indemnify, the definition of "accident" under Texas and New

Mexico law, the requirements of a *Delgado* claim under New Mexico law, and the evidence

developed in the Underlying Lawsuit, the court agrees with Liberty that it has no duty to indemnify

Dixie under the Policy.

The Policy provides coverage for "bodily injury by accident."  Dixie App. 688.  Texas

courts, like New Mexico courts, define an accident as an unexpected event. *Compare Argonaut*

**Memorandum Opinion and Order - Page 11**

*Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 634 (Tex. 1973) ("accident" defined as including "negligent acts of the insured causing damage which is undesigned and unexpected[]") *with Delgado*, 34 P.3d at 1153 ("accident" defined "an unlooked-for mishap or some untoward event that is not expected or designed"). Further, New Mexico law is clear that a *Delgado* claim is not a species of negligence. *See Chairez*, 215 P.3d at 740 ("The burden to establish a *Delgado* claim is high. It requires intentional infliction of or willfully causing an injury. Negligence is not enough."); *Padilla*, 145 P.3d at 113 ("In *Delgado*, our Supreme Court made clear that even under the broader willfulness tort, it was still describing intentional torts and not negligence."). By definition, any liability-producing event that would satisfy the *Delgado* standard for Dixie's liability in the Underlying Lawsuit would necessarily preclude coverage for Dixie under the Policy.

The court rejects Dixie's attempt to equate the *Delgado* standard with Texas's gross negligence. *See* Dixie Resp. to Liberty Summ. J. Mot. 5 ("[I]t is necessary to determine whether New Mexico's *Delgado* cause of action is equivalent to a Texas gross negligence cause of action" so that "this Court has some basis on which to determine whether New Mexico's *Delgado* cause of action . . . constitutes an accident under the . . . Policy."); *see also* Dixie Reply 7-9; Dixie Summ. J. Mem. 40-41. First, there is no underlying claim for gross negligence against Dixie, and Dixie does not seek insurance for gross negligence under the Policy. Thus, Dixie's inquiry into gross negligence is unnecessary. Second, Dixie's attempt to equate a *Delgado* claim and gross negligence under Texas law founders on close inspection. Texas courts consider gross negligence as an extreme species of negligence. *See, e.g., Travelers Ins. Co. v. Reed Co.*, 135 S.W.2d 611, 617 (Tex. Civ. App.—Beaumont 1939, writ dism'd judgm't cor.) ("Gross negligence implies nothing more than some degree of negligence."). By contrast, New Mexico courts consistently consider a *Delgado*

claim as a form of intentional tort with a high burden of proof, and negligence, whether gross or otherwise, is not enough.  *See, e.g.*, *Chairez*, 215 P.3d at 740; *Padilla*, 145 P.3d at 113.

Further, Dixie's argument that gross negligence satisfies the "accident" requirement in the Policy rests on an overly expansive reading of *Fairfield Insurance Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653 (Tex. 2008).  In *Fairfield*, the court was responding to a certified question from the Fifth Circuit, namely, whether "Texas public policy prohibit[s] a liability insurance provider from indemnifying an award of punitive damages imposed on its insured because of gross negligence?"  *Id.* at 654.  The court held that "[t]he Legislature's expressed intent is that Texas public policy does not prohibit insurance coverage for claims of gross negligence in this context." *Id.* at 660.  The court secondarily held that "the public policy of Texas does not prohibit insurance coverage for exemplary damages for gross negligence in the workers' compensation context."  *Id.* at 670.  As pointed out by Liberty, the court in *Fairfield* did not discuss the word "accident" or its definition under Texas law, but interpreted Texas public policy.  The term "bodily injury by accident" was not mentioned.  Texas public policy is not at issue in this case.

Further, the court finds notable Dixie's concession in its briefing that:

> [T]he undisputed evidence establishes that a reasonable person would have expected the death of Hilburn to result from Jack Bara's violation of the 10 foot rule. The undisputed evidence further establishes that Jack Bara was subjectively aware that a violation of the 10 foot rule would result in Hilburn's death.  Finally, the undisputed evidence supports a finding that Jack Bara's violation of the 10 foot rule proximately caused Hilburn's death.   Consequently, the undisputed evidence supports a finding that Jack Bara's willful conduct resulted in Hilburn's death.

Dixie Summ. Judg. Mem. 35.  Liberty argues that this "concession is dispositive of this coverage case because it means the evidence in the Underlying Suit cannot possibly satisfy the 'accident' requirement in the Dixie Policy."  Liberty Reply 1.  The court agrees. The underlying evidence as

summarized by Dixie shows Dixie's conduct was reasonably expected to kill Hilburn and, as such, was non-accidental under *Delgado*.  Dixie may only establish liability in the Underlying Lawsuit if the death of Hilburn resulted from "non-accidental" conduct under *Delgado*.  To recover under the Policy, however, Dixie bears the burden of proving that its liability in the Underlying Lawsuit resulted from an "accident," as that term is defined under Texas law.  The court agrees with Liberty that these two standards applicable to Dixie's declaratory judgment action — the *Delgado* standard for liability to the underlying plaintiffs and the "accident" standard of the Policy  — are mutually exclusive.[3]

In sum, Dixie is not entitled to indemnification for any settlement consummated in the Underlying Lawsuit since Dixie cannot show, as a matter of law, that the liability-producing evidence from the Underlying Lawsuit satisfies the Policy's "accident" requirement.  The court will therefore grant Liberty the declaratory relief sought, and deny Dixie's request for declaratory relief.

## IV.    Conclusion

For the reasons herein stated, the court determines that no genuine dispute of material fact exists as to whether Liberty has an obligation under the Policy to indemnify Dixie, and Liberty is therefore entitled to judgment as a matter of law.  Accordingly, the court **grants** Plaintiff-Counterdefendant Liberty Insurance Corporation's Motion for Summary Judgment and **denies** Defendant-Counterclaimant Dixie Electric, LLC's Motion for Summary Judgment.  Accordingly, the court **declares**:

---

[3] The court further rejects Dixie's argument, raised for the first time in its response to Liberty's motion, that the term "bodily injury by accident" is ambiguous. *See* Dixie Resp. 13-14.  Dixie does not point to a specific ambiguity but suggests that a reasonable interpretation is that "accident" includes the definition of "gross negligence." *See id.* As set forth above, Texas courts and federal courts interpreting Texas law have consistently defined "accident," and no ambiguity exists.

**Memorandum Opinion and Order - Page 14**

(i)     That the Policy does not provide coverage to Dixie for the *Delgado* claim in the Underlying Lawsuit; and

(ii)    That Dixie is not entitled to coverage for indemnity under the Policy for any damages alleged or any judgment in settlement of the Underlying Lawsuit.

As required, a final judgment will issue separately pursuant to Federal Rule of Civil Procedure 58.

It is so **ordered** this **31st day** of **March, 2015.**

Sam A. Lindsay
United States District Judge